UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

FOREST TIRE & AUTO, LLC                                                          PLAINTIFF

VS.                                              CIVIL ACTION NO.: 3:20-CV-72-DPJ-FKB

CATLIN SPECIALTY INSURANCE COMPANY;
ENGLE MARTIN & ASSOCIATES, LLC;
RIMKUS CONSULTING GROUP, INC.; AND
LAWRENCE L. WEDDERSTRAND                                              DEFENDANTS

ORDER

This case presents an insurance-coverage dispute over storm damage to property owned
by Plaintiff Forest Tire & Auto, LLC.   Defendants Engle Martin & Associates, LLC; Rimkus
Consulting Group, Inc.; and Lawrence L. Wedderstrand have separately filed motions to dismiss.
The Court, having considered the parties' submissions, finds Defendants' motions [7, 10, 51]
should be denied.

I.        Background

Forest Tire & Auto says that on November 23, 2018, it discovered property damage
caused by overnight storms.  It filed an insurance claim for the alleged damage with its carrier,
Defendant Catlin Specialty Insurance Co., which forwarded the claim to Engle Martin &
Associates, LLC, for adjusting.  Engle Martin retained an engineering firm, Rimkus Consulting
Group, Inc., which assigned the inspection to a structural engineer, Lawrence L. Wedderstrand.
Catlin ultimately determined that the damage predated the policy period and denied the claim.

Aggrieved by that decision, Forest Tire & Auto sued Catlin, Engle Martin, Rimkus, and
Wedderstrand in state court.  Catlin removed the case based on diversity jurisdiction, asserting
that the Complaint incorrectly identified Wedderstrand as a diversity-spoiling Mississippi
citizen.  Not. of Removal [1].  Initially, Forest Tire & Auto moved to remand.  But after

engaging in remand-related discovery, it withdrew that request, presumably because it discovered that all defendants are diverse.  *See* Withdrawal [45].

At the root of the Complaint is Forest Tire & Auto's belief that Defendants colluded to produce a false engineering report and deny the claim.  It alleges that Catlin and Engle Martin intentionally retained Rimkus because it has "a reputation for identifying bases upon which an insurer can deny coverage."  Compl. [1-1] at 8.  It carries this theory to include Wedderstrand, who "is known in the community as an engineer who frequently 'discovers' preexisting conditions/damage (or either identifies non-covered wear and tear or long-term creep) at the sites he inspects on behalf of Rimkus."  *Id.* at 9.  Forest Tire & Auto claims Catlin and Engle Martin, knowing of this predisposition, engaged Rimkus and Wedderstrand and the four Defendants worked together to secure a "sham" report and avoid any obligation under the policy.  *Id.*

To bolster this allegation, Forest Tire & Auto challenges the accuracy of Wedderstrand's report.  For example, it says the storm and wind damage were "noted throughout the area by a local police officer who responded to Plaintiff's business after the storms set off burglary alarms."  *Id.* at 7.  It claims the winds "blew out the roll-up door of an outbuilding and Plaintiff's roadside business sign located on the east side of the property."  *Id.*

Plaintiff then takes issue with Wedderstrand's reliance on wind-speed data out of Jackson, Mississippi—40 miles away.  *Id.* at 8.  And it faults him for using a "historical aerial image" from October 2014—rather than objective evidence—to support his finding that the damage pre-dated the policy.  *Id.* at 8.  According to Forest Tire & Auto, Wedderstrand ignored the damage to the sign and outbuilding as well as the statement of the officer who was on the scene shortly after the storm.  *Id.*  It concludes that Wedderstrand's opinions were "knowingly false or were formed with a reckless indifference for the truth."  *Id.* at 9.

Forest Tire & Auto advances four counts in its Complaint:  (1) Bad Faith Refusal to Pay; (2) Civil Conspiracy; (3) Negligent and/or Intentional Filing of a False Insurance Investigation Report; and (4) Respondeat Superior.  *Id.* at 10–13.[1]  The case is now before the Court on three motions to dismiss filed by Rimkus [7], Engle Martin [10], and Wedderstrand [51].  Briefing on the first two motions was initially stayed during remand-related discovery, but briefing is now complete on all three motions.

II.     Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555 (citations and footnote omitted).

III.    Analysis

The motions to dismiss reflect some initial confusion as to which claims are advanced against each Defendant, but Forest Tire & Auto's responses mostly clarified its position.  It

---

[1] The counts are numbered I, II, IV, and V—III is omitted.

asserts a bad-faith-refusal-to-pay claim against Engle Martin and Catlin, claims for "gross negligence/intentional filing of a false insurance report" against Rimkus and Wedderstrand, and civil-conspiracy claims against all Defendants.  Pl.'s Resp. [50] at 2.  Finally, Plaintiff seeks to hold Catlin, Engle Martin, and Rimkus responsible for Wedderstrand's actions, or inactions, under respondeat superior.  Compl. [1-1] at 13.  This Order considers those counts slightly out of order.

      A.     Count I, Bad-Faith Refusal to Pay:  Engle Martin

As explained, Catlin, the insurer, hired Engle Martin to adjust Forest Tire & Auto's property-damage claim.  Engle Martin inspected the property on November 29, 2018, then lined up Rimkus to perform another inspection.  Forest Tire & Auto maintains that both Engle Martin and Catlin are liable for bad-faith denial of insurance benefits.

Mississippi law distinguishes between an insurer that has entered a contract with the insured and agents/adjusters with no such contract.  "[W]here a defendant acts as an agent for a known principal, the general rule of Mississippi law is that the defendant agent incurs no liability for breach of duty or contract committed by the principal."  *Jones v. Reynolds*, No. 2:06-CV-57-D-A, 2006 WL 1313820, at *2 (N.D. Miss. May 11, 2006) (quoting *Williams v. Great Am. Life Ins. Co.*, 282 F. Supp. 2d 496, 499 (N.D. Miss. 2003)).

Forest Tire & Auto argues that Engle Martin can nevertheless be liable for bad faith, noting that it authored the denial letter.  *See* Pl.'s Mem. [53] at 2.  The only case Plaintiff cites to support this argument is *Bass v. California Life Insurance Co.*, a decision that is central to all three motions.  581 So. 2d 1087 (Miss. 1991).  As it relates to Engle Martin, the *Bass* court held that adjusters are not parties to the insurance contract and therefore do "not owe the insured a fiduciary duty nor a duty to act in good faith."  *Id.* at 1090 (quoting *Dunn v. State Farm Fire &*

*Cas. Co.*, 711 F. Supp. 1359 (N.D. Miss. 1987)).  Accordingly, non-party adjusters are not subject to liability for bad-faith breach of contract.  *Id.*  That Engle Martin may have written the denial letter is beside the point; the same was true in *Bass*.  *Id.* at 1088 (noting the administrator/adjuster issued the initial denial and initiated the subsequent correspondence justifying the denial).  The bad-faith claim against Engle Martin is dismissed.

That said, the *Bass* court also held that an adjuster can still face liability because it holds "a duty to investigate all relevant information and must make a realistic evaluation of a claim." *Id.* at 1090.  The court concluded that an adjuster should not be liable for "simple negligence in adjusting a claim" but does "incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured."  *Id.*; *see also McAfee v. Allstate Ins. Co.*, No. 3:18-CV-300-HTW-LRA, 2019 WL 4783107, at *9 (S.D. Miss. Sept. 29, 2019) (holding an insurance adjuster is liable only if his or her "'conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured'") (quoting *Gallagher v. Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (Miss. 2004)).

Although not mentioned in the caption to Count I, Forest Tire & Auto does assert this alternative theory against Engle Martin in that Count.  *See* Compl. [1-1] at 10.[2]  The dispute here is whether Plaintiff's asserted facts state a plausible gross-negligence claim against Engle Martin.  Looking to those facts, Plaintiff avers that Engle Martin first conducted its own investigation of the property damage on November 29, 2018.  *Id.* at 8.  After that, Engle Martin hired Rimkus, "an industry player frequently used by insurers with a reputation for identifying bases upon which an insurer can deny coverage."  *Id.* at 8–9.  Plaintiff says that Rimkus assigned

---

[2] Engle Martin addresses the gross-negligence theory as if pleaded against it in Count IV, but that count mentions only Rimkus and Wedderstrand.  Regardless, both parties acknowledge that Plaintiff pleaded the gross-negligence theory against Engle Martin and address it in their briefs.

the claim to Wedderstrand, who had a similar reputation.  *Id.* at 9.  And he found a basis for denying the claim that was "knowingly false or formed with reckless indifference for the truth." *Id.*  Significantly, Plaintiff listed the ways the report was incorrect, some of which—if believed—could plausibly support a gross-negligence claim.  *Id.* at 8–9.

From these factual allegations, Plaintiff makes the legal conclusion that Engle Martin's reliance on Wedderstrand's allegedly deficient report, combined with its knowledge of his reputation, reflects "a willful, malicious act of gross and reckless disregard for Plaintiff's rights as an insured."  *Id.* at 10.  In other words, Engle Martin breached its "duty to investigate all relevant information and [] make a realistic evaluation of a claim."  *Bass*, 581 So. 2d at 1089.

Proving such allegations may prove a tall order—especially as to Engle Martin—but at the Rule 12(b)(6) stage, the Court must view the allegations in the light most favorable to Plaintiff.  *See Martin K. Eby Constr. Co.*, 369 F.3d at 467.  And "the plausibility standard is met when the complaint pleads 'enough fact to raise a reasonable expectation that discovery will reveal evidence' in support of the alleged claims."  *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 827 (E.D. Tex. 2019) (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 559 (explaining that claims should be dismissed at the pleading stage only when there is "no reasonably founded hope that the [discovery] process will reveal relevant evidence" (internal quotation and citation omitted)).  Dismissal of Plaintiff's gross-negligence claim against Engle Martin is denied.

B.    Count IV, Negligence/Intentional Filing of a False Report:  Rimkus and
       Wedderstrand

Forest Tire & Auto claims that Rimkus and Wedderstrand were "negligent in their preparation and filing of insurance property damage reports" and their "grossly negligent and/or intentionally inaccurate" conduct entitles it to punitive damages.  Compl. [1-1] at 12–13 ("Count

IV: Negligent and/or Intentional Filing of a False Insurance Investigation Report").  Admittedly, Plaintiff's caption for this count is misleading because it refers to negligence.  *Id.* at 12.  As stated above, negligence is not the standard.  *Bass*, 581 So. 2d at 1090.  It seems clear though that the count addresses the gross-negligence standard, and the parties framed the issue that way.  *See* Rimkus Mem. [8] at 7 (citing *Gallagher*, 887 So. 2d at 784 (requiring that an adjuster's act amount to "gross negligence, malice, or reckless disregard for the rights of the insured")); Pl.'s Mem. [50] at 7 (citing same).[3]

The gross-negligence standard explained above applies to "an insurance adjuster, agent *or similar entity*."  *Gallagher*, 887 So. 2d at 784 (emphasis added).  Rimkus and Wedderstrand first argue that "[n]o Mississippi court . . . has determined that an engineering consulting firm performing a cause and origin assessment of damages to a business facility constitutes a 'similar entity' that would be subject to the gross negligence tort standard."  Rimkus Mem. [8] at 7.

Rimkus and Wedderstrand chose their words carefully, arguing—as Rimkus has before— that no "Mississippi court" has found an engineer to be a "similar entity."  *Id.*  But what they really mean is that no Mississippi *state* court has reached that conclusion.  Rimkus knows full well that several federal courts hearing Mississippi cases have done just that—Rimkus was the defendant in those cases too.

---

[3]In addition to that theory, Wedderstrand and Rimkus addressed others that might be inferred from Count IV.  For example, they argued against imposing liability for bad-faith refusal to pay, but Plaintiff clarified that it asserted no such claim against these defendants.  Wedderstrand and Rimkus also contended that they are "unaware of the existence of a cause of action for the 'negligent or intentional filing of a false investigation report'" and construed the claim as a legally deficient negligent- or intentional-misrepresentation claim.  Wedderstrand Mem. [52] at 5; *see* Rimkus Mem. [8] at 5.  Plaintiff ignored this argument, suggesting that there is no misrepresentation claim.  Regardless, the Court construes Count IV as asserting the gross-negligence theory against Rimkus and Wedderstrand.  Any other claims that might be inferred are dismissed.

Most notably, Rimkus ignored the Fifth Circuit Court of Appeals's ruling on this issue in *Aiken v. Rimkus Consulting Group, Inc.*, 333 F. App'x 806, 810 (5th Cir. 2009). As in this case, Rimkus argued there that neither it nor the engineer it hired (Jordan) "stood in the position of owing any duty of care to the [insureds]" because Rimkus and Jordan were not "adjusters" subject to insurance regulations under Mississippi law. Appellee's Brief, 2008 WL 6784629. The Fifth Circuit disagreed:

> Jordan, an outside engineer hired to assess the damage caused by wind as opposed to storm surge, qualifies as a "similar entity" who may be found liable for his work on the Aikens' insurance claim only if his conduct amounts to gross negligence, malice, or reckless disregard for the Aikens' rights.

*Aiken*, 333 F. App'x at 810 (quoting *Gallagher*, 887 So. 2d at 784).

Forest Tire & Auto predictably hammered Defendants' failure to acknowledge *Aiken*. So in reply, Rimkus and Wedderstrand brush *Aiken* aside as off point, thinly considered, and unpublished. *See* Rimkus Reply [57] at 8. To begin, Defendants correctly observe that the Fifth Circuit ultimately affirmed judgment as a matter of law in Rimkus's favor because "no reasonable jury could conclude that the changes Jordan made to the initial report amount to gross negligence, malice, or reckless disregard for the rights of the insured." *Aiken*, 333 F. App'x at 810. But that hardly addresses the point because the Fifth Circuit did consider Rimkus's legal argument that neither it nor Jordan could face liability under Mississippi law. As quoted above, Rimkus's appellate brief in *Aiken* made the same arguments it asserts in this case, and the Fifth Circuit rejected them based on *Gallagher*. *Id.* Had the Fifth Circuit agreed with Rimkus, it would have had no reason to rule on the merits. Finally, the *Aiken* opinion is unpublished, but a distinguished panel (Judges Edith Jones, Carl Stewart, and Leslie Southwick) considered and rejected Rimkus's position. *Aiken* may not be binding, but it carries persuasive value. *See Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006) (recognizing that unpublished

decisions issued after January 1, 1996, are not controlling precedent but may be considered persuasive authority).  The gross-negligence standard can extend to defendants like Rimkus and Wedderstrand; whether it does is a factual question for another day.[4]

Next, Rimkus and Wedderstrand dispute that their actions amount to "'reckless' or any intentional disregard of Plaintiff's rights."  Rimkus Mem. [8] at 8.  They insist the conduct alleged here is "exponentially less egregious," Wedderstrand Mem. [52] at 10, compared to that alleged in *Gallagher*, which the Mississippi Supreme Court found was "at the most, negligent," 887 So. 2d at 784.  But the procedural posture is markedly different.  In *Gallagher*, the Court considered evidence presented at trial.  887 So. 2d at 780 (noting the jury returned a verdict against Gallagher).  Here, at the Rule 12(b)(6) stage, the Court is bound to construe the allegations in the light most favorable to Forest Tire & Auto and ask if there is "no reasonably founded hope that the [discovery] process will reveal relevant evidence."  *Twombly*, 550 U.S. at 559.  Defendants' motions to dismiss Count IV are denied.

C.      Count II, Civil Conspiracy:  All Defendants

Forest Tire & Auto claims all Defendants acted as co-conspirators "as part of a plan or scheme to engage a 'sham' report."  Compl. [1-1] at 11.  "Conspiracy requires a finding of '(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as

---

[4] Even after *Aiken*, Rimkus attempted the same slight-of-hand argument before United States District Judge Keith Starrett, asserting that no "Mississippi court" has applied the gross-negligence test to an engineer.  *Mooney v. Shelter Mut. Ins. Co.*, No. 2:17-CV-204-KS-MTP, Rimkus Mem. [18] at 10.  Although Judge Starrett considered the argument under a more forgiving remand standard, he too rejected it.  *Mooney v. Shelter Mut. Ins. Co.*, No. 2:17-CV-204-KS-MTP, 2018 WL 9963837, at *2 (S.D. Miss. Mar. 12, 2018) (citing *Smith v. Rimkus Consulting Grp. Inc.*, No. 1:06-CV-515-LTS-RHW, 2006 WL 2620636, at *4 (S.D. Miss. Sept. 12, 2006)).

9

the proximate result.'" *Gallegos v. Mid-S. Mortg. & Inv., Inc.*, 956 So. 2d 1055, 1060 (Miss. Ct.

App. 2007) (quoting *Gallagher*, 887 So. 2d at 786).

 All Defendants argue that they were acting as agents of the insurer (the principal).  And

because a corporation cannot conspire with itself, an agent cannot conspire with the insurer that

retained him.  *See Tipton v. Nationwide Mut. Fire Ins. Co.*, 381 F. Supp. 2d 567, 571 (S.D. Miss.

2003) (finding adjuster, as an agent of the insurer, could not conspire with the insurer and was

improperly joined).

 Forest Tire & Auto concedes this as true but points out—without authority—that it has

alleged a conspiracy between all four Defendants—Catlin, Engle Martin, Rimkus, and

Wedderstrand.  Pl.'s Mem. [53] at 6.  Thus, they seem to suggest that not every relationship

would fall under the agent/principal bar to a conspiracy claim.  Neither Rimkus nor

Wedderstrand addresses that argument.  Engle Martin did respond, urging the Court to extend the

agent/principal bar to all players.  Engle Martin Reply [56] at 3.  But like Forest Tire & Auto,

Engle Martin offered no legal authority addressing this precise issue.

 Engle Martin's argument offers some appeal, especially as applied to itself since it acted

as Catlin's adjuster *and* retained Rimkus—a middleman of sorts.  That said, it is at least

conceivable that some combination of defendants could evade the agent/principal bar to

conspiracy claims.  The Court's quick research suggests that there may be at least some

persuasive authority on this point, but absent any substantive argument from either side, the

Court is reluctant to take a deep dive into this potentially tricky issue.  The case is moving

forward anyway, so the Court will not yet dismiss this count on this basis.

 As for the claim itself, Rimkus insists that Plaintiff's Complaint "is devoid of any

allegation" as to "what agreement the Defendants purportedly entered into among themselves."

Rimkus Mem. [8] at 10.  Forest Tire & Auto counters that an agreement "may be proven by

circumstantial evidence, such as declarations and conduct of the alleged conspirators."  Pl.'s

Mem. [54] at 5 (quoting *Cook v. Wallot*, 172 So. 3d 788, 801 (Miss. Ct. App. 2013)).  Though it

remains to be seen if Plaintiff can prove its claims, at this early stage, Forest Tire & Auto has

advanced allegations of an agreement by the parties to fabricate a sham report.

Finally, all moving Defendants argue that a conspiracy claim must be based on an

underlying tort.  *Aiken*, 333 F. App'x at 812; *see Wells v. Shelter Gen'l Ins. Co.*, 217 F. Supp. 2d

744, 755 (S.D. Miss. 2002) (collecting cases).  Because the Court has denied the parties' motions

to dismiss the underlying tort claims, this ground is unpersuasive.[5]  The Court finds, at this stage,

the conspiracy claim should go forward.[6]

D.      Count V, Respondeat Superior

Lastly, Forest Tire & Auto asserts that Engle Martin, Catlin, and Rimkus are responsible

for Wedderstrand's actions or inactions under the doctrine of respondeat superior.  Compl. [1-1]

at 13.  "Based on the doctrine of respondeat superior, a principal, or master, is vicariously liable

---

[5]  Rimkus, relying on decisions outside this jurisdiction, argues in reply that it is impossible to conspire to commit negligence, as an *intentional* tort is required.  Rimkus Reply [57] at 9–10.  "It is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs."  *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (citation omitted)).  In addition, Plaintiff alternatively pleaded intentional misconduct in Count IV.  Compl. [1-1] at 12–13.  That said, this may be an argument to explore down the road.

[6] Engle Martin also makes a passing argument that conspiracy and fraud allegations must be pled with particularity under Federal Rule of Civil Procedure 9(b), but it fails to develop that theory as to the conspiracy claim specifically.  Engle Martin Mem. [11] at 5 (citing *U.S. ex rel. Woods v. SouthernCare, Inc.*, No. 3:09-CV-313-CWR-LRA, 2013 WL 1339375, at * 7 (S.D. Miss. Mar. 30, 2013)); *see* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  Plaintiff clarified in response that it has not pled a claim for fraud.  Pl.'s Resp. [50] at 2.  Similarly, Wedderstrand's alternative request for a more definite statement as to the misrepresentation/fraud claim is moot.  To the extent he is seeking particularity as to the conspiracy claim, that request is denied.

for his agent's acts when they are taken in the course of his employment and in furtherance of the master's business." *Am. Zurich Ins. Co. v. Guilbeaux*, No. 1:16-CV-354-LG-RHW, 2018 WL 1661629, at *8 (S.D. Miss. Apr. 5, 2018) (quoting *Martin v. Shelter Mut. Ins. Co.*, No. 3:15-CV-675-DPJ-FKB, 2016 WL 3648288, at *4 (S.D. Miss. July 1, 2016)).

Engle Martin asserts two arguments in response to this liability theory.  First, it says Plaintiff's claim is "upside down" because "the harm it allegedly suffered was the sole result of the denial of its insurance claim—a decision made by Catlin alone," Engle Martin Mem. [11] at 10, "not the actions or inactions of Wedderstrand," Engle Martin Reply [56] at 5.  Second, Engle Martin returns to the gross-negligence standard and asserts there has been no allegation against any party that rises to the level of gross negligence.  Engle Martin Mem. [11] at 10. Wedderstrand and Rimkus never address this theory of liability.

Engle Martin's second argument is easily rejected—at this stage, the Court has denied Defendants' motions to dismiss the gross-negligence-related claims.  As to the first argument, though not a perfect fit, Plaintiff points to *Southeastern Real Estate Holdings, LLC v. Companion Property & Casualty Insurance., Co.*, No. 2:15-CV-62-KS-MTP, 2016 WL 843378 (S.D. Miss. Mar. 1, 2016).  There, the district court considered a bad-faith claim against an insurer, where the insurer defended its basis for denying the claim by citing an engineer's report. *Id.* at *3 (noting the engineer was employed by Rimkus).  The plaintiff accused the engineer of being biased and not credible, in part based on a misrepresentation of facts in an unrelated case. *Id.*  The district court noted,

> [T]he fact that an insurer can point to the report of an independent investigator
> would not insulate the insurer from liability for punitive damages if there had
> been collusion between the insurer and the "independent" investigator, or if the
> investigator, without the knowledge of the insurance company, intentionally made
> a false report.

*Id.* (quoting *Sutton v Northern Ins. Co.*, 681 F. Supp. 1221, 1223 n.1 (S.D. Miss. 1988)) (alteration in *Southeastern*).  The Court granted summary judgment, noting the plaintiff's evidence fell short.  *Id.*

Again, though not a great fit, *Southeastern* at least suggests that vicarious liability can be appropriate where an insurer, or perhaps even an adjuster, relies on an engineer's report that is intentionally false.  *Id.*  This count, like the others in this case, is poorly developed at this time and may ultimately be the subject of future motions.  But at this stage, the Court is not willing to say that respondeat superior, as a theory of liability, has no place in this lawsuit.

IV.    Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changed the outcome.  For the reasons stated, Defendants' motions to dismiss [7, 10, 51] are denied.

As Judge Ball stayed all discovery pending a ruling on the motions to dismiss, the parties are directed to notify Judge Ball's chambers that the matter can be reset for a Telephonic Case Management Conference.  *See* Aug. 3, 2020 Text-Only Order.

**SO ORDERED AND ADJUDGED** this the 27th day of August, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE